SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**James G. Lowe, M.D. v. Bernard Audet (A-12-25) (090940)**

**Argued April 27, 2026 -- Decided July 15, 2026**

**JUSTICE FASCIALE, writing for a unanimous Court.**

In this appeal, the Court addresses whether insurance brokers, producers, and agents are exempt from the Consumer Fraud Act (CFA) as "semi-professionals" under the "learned professional" exception.

Plaintiff James Lowe, M.D., is a neurosurgeon who co-owned a medical practice, as well as several unrelated businesses. Bernard Audet and Richard Laver are insurance brokers and producers employed by the Creative Financial Group, Ltd. (collectively, defendants). Defendants marketed, sold, produced, and procured insurance policies to and for plaintiff and his medical practice that covered, among other things, loss related to disability. Plaintiff alleges that defendants advised him that he would receive maximum benefits under his policies should he become disabled and never advised him that business interests unrelated to his medical practice could affect a benefits claim.

Plaintiff was diagnosed with a vision condition that prevented him from performing neurosurgery. Plaintiff made claims for maximum benefits under the insurance policies. The insurance companies paid only partial benefits due to plaintiff's other business interests unrelated to his medical practice.

Plaintiff filed a complaint, alleging that defendants violated the CFA by negligently failing to obtain sufficient disability insurance for him. Defendants moved to dismiss the CFA count, and the trial court granted the motion, relying on Plemmons v. Blue Chip Insurance Services, Inc., 387 N.J. Super. 551 (App. Div. 2006). The trial court acknowledged, however, that it was "arguably faced with two competing" appellate decisions, Plemmons and Shaw v. Shand, 460 N.J. Super. 592 (App. Div. 2019). The Appellate Division affirmed. The Court granted leave to appeal the dismissal of the CFA count. 262 N.J. 143 (2025).

**HELD:** Insurance brokers, producers, and agents are not exempt from the CFA under the learned professional exception as semi-professionals or otherwise.

1

1.  New Jersey has one of the nation's strongest consumer protection laws.  The Court reviews relevant CFA provisions.  Exceptions to the CFA -- both for learned and semi-professionals -- emanate from courts employing different tests to determine whether the CFA encompasses specific conduct.  Among the standards courts have considered are the nature of the activity involved; whether that activity is regulated; historical prohibitions on advertising by certain professions; and the level of education required by a particular field.  The Court reviews historical case law addressing the learned professional exception.  (pp.8-13)

2.  In Plemmons, the Appellate Division concluded that "insurance brokers are 'semi-professional[s]' who are excluded from liability under the CFA for the services they render within the scope of their professional licenses."  387 N.J. Super. at 564.  Thirteen years later, the Appellate Division decided Shaw, which "narrowly construed" the learned professional exception and concluded it applies only to those professionals "who have historically been recognized as 'learned' based on the requirement of extensive learning or erudition."  Shaw also determined that "[t]o the extent our prior decisions, including Plemmons . . . , have applied the learned professional exception to 'semi-professionals' who are regulated by a separate regulatory scheme, we . . . depart from that reasoning."  Ibid.  (pp. 14-15)

3.  The Court explains that the "semi-professional" exception has no support in the text of the CFA, yet the CFA has not been amended to specifically nullify the exception.  Insurance brokers do not fall under either the learned professional or semi-professional exception, no matter what methodology one uses to define those terms.  They are not one of the narrow class of professionals who have historically been recognized as "learned."  Insurance brokers also were permitted to advertise at the time the CFA was adopted, so they do not belong to the class of professionals that could not have been regulated by the CFA.  And although they are licensed, licensing and regulation alone are not a sufficient basis for exemption from the CFA, and there is no direct, unavoidable conflict between the CFA and the regulations governing insurance brokers.  The CFA's substantive, remedial purpose would be undermined if insurance brokers were permitted to seek refuge from CFA liability through the so-called "semi-professional" exemption.  (pp. 16-17)

4.  The Court does not assess or affirm the underlying "learned professional" exception and invites the Legislature to clarify whether certain professionals are exempt from liability under the CFA.  (p. 18)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.**

2

SUPREME COURT OF NEW JERSEY

A-12 September Term 2025

090940

James G. Lowe, M.D.,

Plaintiff-Appellant,

v.

Bernard Audet,
Richard Laver, and
The Creative Financial
Group, Ltd.,

Defendants-Respondents.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| April 27, 2026 | July 15, 2026 |

Stephen J. DeFeo argued the cause for appellant (Brown
& Connery, attorneys; Stephen J. DeFeo, Kathleen E.
Dohn, and Taylor L. Johnson, on the brief).

Barry R. Temkin argued the cause for respondents
Bernard Audet and The Creative Financial Group, Ltd.
(Mound Cotton Wollan & Greengrass, attorneys; Barry
R. Temkin, Kate E. DiGeronimo, and Katharine Anne
Lechleitner, on the briefs).

Jared K. Levy argued the cause for respondent Richard
Laver (Wood, Smith, Henning & Berman, attorneys;
Jared K. Levy, on the briefs).

1

September R. McCarthy, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jennifer Davenport, Attorney General, attorney; Jeremy M. Feigenbaum, Solicitor General, and Shankar Duraiswamy, Deputy Solicitor General, of counsel and on the brief, and September R. McCarthy, on the brief).

Bruce H. Nagel submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Nagel Rice, attorneys; Bruce H. Nagel and Robert H. Solomon, on the brief).

Daniel E. Cohen submitted a brief on behalf of amicus curiae New Jersey Citizen Action (Pashman Stein Walder Hayden, attorneys; CJ Griffin, of counsel, and Daniel E. Cohen, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, we address whether the trial judge, whose opinion was affirmed by the Appellate Division, correctly determined that insurance brokers, producers, and agents are exempt from the Consumer Fraud Act (CFA or the Act), N.J.S.A. 56:8-1 et seq., as "semi-professionals" under the "learned professional" exception.

We hold that insurance brokers, producers, and agents are not exempt from the CFA under the learned professional exception as semi-professionals or otherwise. We reverse the judgment of the Appellate Division, vacate the

2

dismissal of the CFA counts in the complaint, and remand for further proceedings.

                                          I.

We accept the facts as alleged in plaintiff's complaint as true because the appeal reaches us from motions to dismiss for failure to state a claim under Rule 4:6-2(e).  See Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 268-69 (2004).

Plaintiff James Lowe, M.D., is a neurosurgeon who worked at and co-owned a medical practice, as well as several unrelated businesses.  Defendants Bernard Audet and Richard Laver are insurance brokers and producers (collectively, the insurance brokers).  Defendant The Creative Financial Group, Ltd. (CFG) employed the insurance brokers.  Between 2003 and 2016, defendants marketed, sold, produced, and procured insurance policies to and for plaintiff and his medical practice that covered, among other things, loss related to disability.  Plaintiff alleges that defendants advised him that he would receive maximum benefits under his policies should he become disabled and never advised him that business interests unrelated to his medical practice could affect a benefits claim.

In 2021, a neuro-ophthalmologist diagnosed plaintiff with bilateral maculopathies, a permanent vision condition that prevented him from

                                          3

performing neurosurgery.  Plaintiff made claims for maximum benefits under the insurance policies that he purchased from defendants.  The insurance companies, however, paid only partial benefits due to plaintiff's other business interests unrelated to his medical practice.

Plaintiff filed this complaint against defendants and alleged nine causes of action, including that defendants violated the CFA by negligently failing to obtain sufficient disability insurance for plaintiff.  As to that CFA count, plaintiff generally alleged that he is a consumer who purchased the insurance policies for personal and professional use; he sustained ascertainable loss caused by defendants' CFA violations; defendants were merchants within the meaning of the CFA; the insurance policies are "merchandise" under the CFA, citing Lemelledo v. Benefit Management Corp. of America, 150 N.J. 255, 265 (1997); and the CFA applies to defendants' marketing, sale, and procurement of the policies issued to plaintiff.  In addition, plaintiff specifically alleged that defendants engaged in fraudulent, deceptive, and unconscionable commercial practices in marketing and selling the disability insurance policies, including knowingly omitting and concealing material facts with the intent to mislead consumers.  Plaintiff asserts that defendants are jointly and severally liable for treble damages under the CFA.

Defendants filed <u>Rule</u> 4:6-2(e) motions to dismiss the CFA count, which the trial judge granted.  The judge relied on <u>Plemmons v. Blue Chip Insurance Services, Inc.</u>, 387 N.J. Super. 551 (App. Div. 2006), but acknowledged that he was "arguably faced with two competing" appellate decisions, <u>Plemmons</u> and <u>Shaw v. Shand,</u> 460 N.J. Super. 592 (App. Div. 2019).  The Appellate Division affirmed.

We granted plaintiff's motion for leave to appeal from the dismissal of the CFA count.  262 N.J. 143 (2025).  We also granted motions to appear as amici curiae filed by the Attorney General, the New Jersey Association for Justice (NJAJ), and New Jersey Citizen Action (NJCA).

## II.

Plaintiff argues that the learned professional exception to the CFA should be inapplicable to insurance brokers, producers, and agents.  Plaintiff contends we should adhere to <u>Shaw</u>, which defined the learned professional exception as limited to "those professionals who have historically been recognized as 'learned' based on the requirement of extensive learning or erudition."  460 N.J. Super. at 599.

Defendants rely on <u>Plemmons</u>, 387 N.J. Super. at 564, which held that insurance brokers are "semi-professionals," and are thus "excluded from liability under the CFA for the services they render within the scope of their

5

professional licenses." Defendants contend there is no "conflicting authority" to part ways with Plemmons, which they assert remains good law and distinguishable from Shaw. They argue that insurance brokers fall within both the learned professional and semi-professional judicially created exceptions to the CFA.

The Attorney General stresses that New Jersey's CFA is one of the nation's strongest consumer protection laws, that its goal is to protect consumers, and that it must be interpreted liberally and broadly. The Attorney General asserts that, since this Court's decision in Macedo v. Dello Russo, 178 N.J. 340 (2004), our appellate courts have struggled to identify the contours of the learned professional exception and have issued conflicting rulings about whether it covers licensed semi-professionals. The Attorney General contends that the exception extends only to professionals historically excluded from participating in activities within the CFA's ambit, which does not include defendants here.[1]

The NJAJ asserts that the "semi-professional" exception is inconsistent with the current text and purpose of the CFA. It contends that the learned

---

[1] The Attorney General acknowledges that circumstances have changed since Macedo -- most notably, professionals who were previously excluded from the CFA by Macedo due to prohibitions on advertising are now permitted to advertise -- and adds generally that questions pertaining to these judicially created exemptions from the CFA involve difficult policy choices.

6

professional exception to the CFA is inapplicable to "semi-professionals" and that it should apply "only to those professions which have been historically recognized as 'learned.'" It also explains that the CFA has been expanded since its enactment and that the judicially created learned professional common law exception is premised on the "language of the CFA as it existed over half a century ago."

The NJCA "strongly believes" that a semi-professional exception is "flatly inconsistent" with the CFA's broad and remedial purpose to "root out consumer fraud." Regardless, it asserts that there is no evidence that "a direct and unavoidable conflict exists between application of the CFA and application of [any] other regulatory scheme," as required by Lemelledo, 150 N.J. at 270. The NJCA explains that most states exercise "relative caution" against granting "blanket exemptions" from their consumer fraud laws and that, in thirty-four states, "learned professionals, including doctors and lawyers," can be sued for claims arising from "commercial or entrepreneurial aspects of their profession."

III.

A.

"We review de novo the trial court's denial of [a] defendant['s] motion to dismiss under Rule 4:6-2(e)." AC Ocean Walk, LLC v. Am. Guar. & Liab.

7

Ins. Co., 256 N.J. 294, 310 (2024). We similarly review de novo the legal question of whether insurance brokers are exempt from the CFA by way of the learned professional or semi-professional exceptions. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

B.

New Jersey has one of the nation's strongest consumer protection laws. Since its enactment, the Legislature has continually expanded the CFA's scope to manifest its broad purpose to protect consumers against fraud. The CFA provides:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .
>
> [N.J.S.A. 56:8-2 (emphases added).]

The CFA defines "merchandise" in part as "any . . . services or anything offered, directly or indirectly to the public for sale." Id. at -1(c). And the Act broadly defines "advertisement" to

8

include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan.

[Id. at -1(a).]

The "clear legislative intent [is] that [the CFA's] provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Lemelledo, 150 N.J. at 264.

C.

Our case law demonstrates that the exceptions to the CFA -- both for learned professionals and for semi-professionals -- emanate from courts employing different tests and standards to determine whether the CFA encompasses specific conduct. Among the standards courts have considered are the nature of the activity involved; whether that activity is regulated; historical prohibitions on advertising by certain professions; and the level of education and erudition required by a particular field.

In Neveroski v. Blair, a case addressing the general nature of activity by real estate brokers, the Appellate Division planted the seed for the so-called "semi-professional" judicial exception to the CFA. 141 N.J. Super. 365, 379 (App. Div. 1976). There, the central issue before the appellate court was

9

whether real estate sales fell within the CFA's definition of "merchandise." Id. at 375-76. The appellate court noted that, in 1967, the Legislature had considered a bill that would have added "real estate, securities" to the CFA's definition of "merchandise" -- A. 715 (1967) -- but ultimately did not include that language in the CFA. Neveroski, 141 N.J. Super. at 378; L. 1967, c. 301, § 1. The appellate court thus concluded that the definition of "merchandise" did not include real estate sales. Neveroski, 141 N.J. Super. at 378-79. It is in that context that it stated:

> A real estate broker is in a far different category from the purveyors of products or services or other activities. He is in a semi-professional status subject to testing, licensing, regulations and penalties through other legislative provisions. Although not on the same plane as other professionals such as lawyers, physicians, dentists, accountants or engineers, the nature of his activity is recognized as something beyond the ordinary commercial seller of goods or services -- an activity beyond the pale of the act under consideration.
>
> Certainly no one would argue that a member of any of the learned professions is subject to the provisions of the [CFA] despite the fact that he renders "services" to the public. And although the literal language may be construed to include professional services, it would be ludicrous to construe the legislation with that broad a sweep in view of the fact that the nature of the services does not fall into the category of consumerism.
>
> Similarly, in the absence of clear and explicit language in the statute, a broker who negotiates the sale of real estate and thereby renders "services" is nevertheless

10

outside the scope of persons sought to be covered by the Act.

[Id. at 379 (emphases added) (citation omitted).]

The Legislature nullified Neveroski: In January 1976, two months before Neveroski was issued, the Legislature amended the CFA to include the use of any of the prohibited acts "in connection with the sale or advertisement of any merchandise [o]r real estate." Id. at 377 n.3 (emphasis added); see also Lee v. First Union Nat'l Bank, 199 N.J. 251, 259 (2009) (explaining that Neveroski was "superseded by" N.J.S.A. 56:8-2). But as the Appellate Division later explained, "despite the Legislature's abrogation of Neveroski's holding, subsequent decisions of this court have seemingly accorded its semi-professional exemption precedential weight." Shaw, 460 N.J. Super. at 614. Again, Neveroski tied the applicability of the exemption to the nature of the activity involved. See Neveroski, 141 N.J. Super. at 379.

In Lemelledo, this Court focused on another asserted rationale for exempting certain professionals or semi-professionals from the CFA: concurrent regulation of their field. 150 N.J. at 266-67. The central question in Lemelledo was whether the CFA applies to commercial lenders who engaged in "loan packing," or increasing the principal amount of a loan by combining the loan with loan-related services that the borrower does not want. Id. at 260.

11

Applying the Act's broad definitions, this Court concluded the CFA applied to such activity. Id. at 266. But because several state agencies simultaneously regulated lenders offering credit insurance, the Court found it was necessary to consider "whether the existence of other regulations creates an exemption to the CFA for particular conduct that otherwise would fall within its provisions." Id. at 268.

To determine whether the defendant has overcome the presumption that the CFA applies to a covered activity, the Lemelledo Court established the following framework:

> [A] court must be satisfied . . . that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that the conflict must be patent and sharp, and must not simply constitute a mere possibility of incompatibility.

> [Id. at 270.]

Lemelledo did not expressly adopt or create a "learned professional" or "semi-professional" exception to the CFA. Indeed, the Court found no direct conflict between the CFA and the regulations governing commercial lenders and affirmed the reinstatement of the plaintiff's CFA claim. Id. at 275.

12

Macedo is the first case in which this Court addressed the learned professional exception to the CFA. There, the plaintiffs alleged that two doctors and a corporate entity violated the CFA by falsely advertising the extent of one of the doctor's licensure. 178 N.J. at 342. The Macedo Court held that a physician's advertisements concerning his own professional services were insulated from the CFA under the learned professional exception. Id. at 346.

In so holding, the Court determined that the CFA was "obviously . . . not meant to encompass advertising by physicians because such advertising was not permitted" at the time it was enacted. Id. at 343. It reached that determination even though physicians were in fact permitted to advertise as of 1978, and that advertising by physicians could be reasonably regulated. Id. at 343-44. In addition, although the Legislature nullified the holding in Neveroski, the Macedo Court also quoted dicta in Neveroski that the "nature of the services" by the "learned professions" does not "fall into the category of consumerism." Id. at 344 (quoting Neveroksi, 141 N.J. Super. at 379). Notably, although Macedo recognized two reasons for the learned professional exception -- historic inability to advertise and the nature of the services provided -- it did not expressly endorse or in any way create a semi-professional exception to the CFA.

13

Two years after <u>Macedo</u>, the Appellate Division rendered its decision in

<u>Plemmons</u>, which reached two conclusions. First, the appellate court

concluded that "insurance brokers are 'semi-professional[s]' who are excluded

from liability under the CFA for the services they render within the scope of

their professional licenses." 387 N.J. Super. at 564 (alteration in original).

Second, it determined that "insurance brokers are subject to testing, licensing

and regulation comparable to real estate brokers, and thus are exempt from

liability under the CFA for the reasons expressed by this court in <u>Neveroski</u>

and" -- in the <u>Plemmons</u> court's view -- "reaffirmed by the Supreme Court in

<u>Macedo</u>." <u>Id.</u> at 565.

Thirteen years later, the Appellate Division rendered its decision in

<u>Shaw</u>, which "narrowly construed" the learned professional exception to the

CFA and concluded that it applies only to those professionals "who have

<u>historically</u> been recognized as 'learned' based on the requirement of <u>extensive</u>

<u>learning or erudition</u>." 460 N.J. Super. at 599 (emphases added). <u>Shaw</u> also

determined that "[t]o the extent our prior decisions, including <u>Plemmons</u> . . . ,

have applied the learned professional exception to 'semi-professionals' who

are <u>regulated by a separate regulatory scheme</u>, we are constrained, upon further

review, to depart from that reasoning as inconsistent with [<u>Lemelledo</u>]." <u>Ibid.</u>

(emphasis added).

14

Judge Sabatino, who sat on the Plemmons panel, wrote a concurrence in Shaw. In joining the majority's opinion that home inspectors are not exempt from CFA liability, he stated:

> Unlike in Plemmons, in the present case our court has the benefit of the advocacy of the Attorney General, who persuasively argues as amicus curiae why the semi-professional distinction is problematic and appears to clash with legislative intent and the limited Supreme Court precedent that exists on the subject. The Attorney General also raises substantial policy considerations from his unique perspective as both an enforcer of the CFA and as overseer of the Division [of Consumer Affairs, which] regulates home inspectors.
>
> With all due respect, I've changed my mind.[2]
>
> [Id. at 628 (Sabatino, P.J.A.D., concurring) (emphases added).]

In expressing serious doubts about the viability of the semi-professional exception, Judge Sabatino stopped short of advocating for the elimination of the doctrine entirely, remarking instead that the contours of the learned professional exception required greater clarity, from either this Court or the Legislature. Id. at 629.

---

[2] In changing course, Judge Sabatino cited Olds v. Donnelly, 150 N.J. 424, 440-42 (1997) (pointing to Justice Stewart G. Pollock's explanation -- that experience had shown the approach had not fulfilled expectation -- as to why the Court departed from an approach of one of its previous decisions).

15

IV.

Our review of the CFA and case law related to the so-called "semi-professional" exception leaves more questions than answers. The exception has no support in the text of the CFA. Although the CFA is a remedial statute to be liberally interpreted to protect consumers, the CFA has not been amended to specifically nullify the exception. Notwithstanding those lingering questions, we are certain that insurance brokers, producers, and agents are not exempt from the CFA.[3]

Insurance brokers do not fall under either the learned professional or semi-professional exception, no matter what methodology one uses to define those terms. They are not one of the narrow class of professionals who have historically been recognized as "learned": physicians, attorneys, and theologians. Shaw, 460 N.J. Super. at 599, 611. Insurance brokers also were permitted to advertise at the time the CFA was adopted, so they do not belong to the class of professionals that could not have been regulated by the CFA. Macedo, 178 N.J. at 346. And although they are licensed, Lemelledo makes clear that licensing and regulation alone are not a sufficient basis for exemption from the CFA, and there is no direct, unavoidable conflict between

---

[3] To the extent there is any distinction between insurance brokers, insurance producers, and insurance agents, none of those occupations are exempt from the CFA under any exception.

16

the CFA and the regulations governing insurance brokers. 150 N.J. at 270. While we do not doubt that insurance brokers are skilled in their field, we note that the educational requirements are minimal: a 20-hour state-approved course for each license type, with no requirement for a high school diploma or equivalent. See N.J.A.C. 11:17-3.4.

The CFA's substantive, remedial purpose would be undermined if insurance brokers were permitted to seek refuge from CFA liability through the so-called "semi-professional" exemption. The CFA was designed to "prevent deception, fraud or falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate." Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 376-77 (1977). "The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Lemelledo, 150 N.J. at 264. It is well-established "that where the purpose of legislation is remedial and humanitarian, any exemption must be narrowly construed, giving due regard to the plain meaning of the language and the legislative intent." Serv. Armament Co. v. Hyland, 70 N.J. 550, 559 (1976). Accordingly, we must narrowly interpret the learned professional exception while also recognizing the need to broadly interpret the CFA "to accomplish its remedial purpose." Lemelledo, 150 N.J. at 264.

Under that interpretative framework, extending the learned professional exception to insurance brokers would unduly narrow the scope of the CFA and undermine the Legislature's intent for it to serve as one of the nation's strongest consumer protection laws.

Accordingly, semi-professionals like insurance brokers, producers, and agents are not exempt from the CFA. To hold otherwise would extend judicially created exceptions far beyond their limited origins and "would unfairly restrict the ability of private litigants and the Division [of Consumer Affairs] to seek redress for fraudulent commercial practices." Shaw, 460 N.J. Super. at 620. Such an interpretation would "threaten[] to become the exception that swallows the rule." Id. at 618.

Our focus in this appeal is on whether semi-professionals, like insurance brokers, are exempt from the CFA. We do not assess or affirm the underlying "learned professional" exception, a judicially created exception that does not appear in the text of the CFA. We have serious doubts about the basis for the learned professional exception but await a case that presents a direct challenge to address it. Given the important policy considerations that the learned professional exception implicates, we invite the Legislature to provide clarity about whether certain professionals are exempt from liability under the CFA, and if so, to identify the relevant professionals.

18

## V.

We reverse the judgment of the Appellate Division and remand for further proceedings.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, NORIEGA, and HOFFMAN join in JUSTICE FASCIALE's opinion.

19